AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>Joseph Ward<br><br>Defendant(s) | Case No.<br>8:19-mj-2013-T-CPT |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 24, 2019__ in the county of __Pinellas__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in possession of firearms and ammunition. |

This criminal complaint is based on these facts:

See Attached affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

TFO Ryan T. McMullen, DEA
Printed name and title

Sworn to before me and signed in my presence.

Date: __July 25, 2019__

_____
Judge's signature

City and state: __Tampa, Florida__    HON. CHRISTOPHER P. TUITE
Printed name and title
U.S. Magistrate Judge

# AFFIDAVIT IN SUPPORT OF
# SEARCH WARRANT APPLICATION

I, Ryan T. McMullen, a Task Force Officer with the Drug Enforcement Administration ("DEA"), being duly sworn, depose, and state:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Task Force Officer with DEA and have been since January 2018. I have also been employed with the Clearwater Police Department ("CPD") since 2007, currently holding the title of Detective in the Vice and Narcotics Division. In my capacity as a CPD Detective, I have investigated narcotics offenses for more than four years.

2. I have completed multiple training courses, to include the following: Basic Law Enforcement Academy offered by St. Petersburg College; Tactical Narcotics Training and Undercover Operations through the Southeastern Public Safety Institute; Undercover Operations from the Multijurisdictional Counterdrug Task Force; a 40 hour course on Narcotics and Dangerous Drugs Investigations from the Criminal Justice Standards and Training Commission; and an 80 hour DEA Basic Narcotics Investigator School from the United States Drug Enforcement Administration.

3. In connection with my official DEA duties, I investigate criminal violations of controlled substances laws, including 21 U.S.C. §§ 841 and 846. I have been involved in numerous drug investigations, which have resulted in arrests and seizures of narcotics. I am familiar with the method of operation of

drug buyers and sellers and with the "slang" or coded language used to describe drug transactions. During my career in law enforcement, I have conducted investigations involving the identification of co-conspirators through telephone records and bills, financial records, drug ledgers, photographs, and/or other documents. I have directed numerous confidential informants to successfully infiltrate narcotics' enterprises through intelligence gathering, participation in consensual recordings, and/or controlled purchases of illegal drugs. Based on my training and experience in investigating drug traffickers, I know that drug dealers use or carry firearms during drug transactions or deals as a means of protection.

4. The facts contained in this affidavit are based on my personal knowledge and/or reliable information that other law-enforcement officers involved in this investigation and others have related to me in my official capacity. This affidavit should not be construed as a complete statement of all the information generated in this investigation, but only those facts that I believe are sufficient to establish probable cause in support of this criminal complaint.

## STATUTORY AUTHORITY

5. I submit this affidavit in support of a criminal complaint charging the defendant, Joseph WARD, who has been convicted of multiple felonies, with possessing firearms and ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). I obtained the following facts consulting with law-

enforcement officers, reviewing investigative reports, and conducting and participating in this investigation:

## PROBABLE CAUSE

6. Law enforcement initiated an investigation into WARD after a CPD documented confidential source provided information that WARD was a fentanyl distributor operating in Clearwater, FL, and the surrounding areas. Through various post deal surveillance, law-enforcement databases, and CPD confidential sources, law enforcement learned that WARD resided at 1135 Fairmont Street, Clearwater, Florida 33755. In addition to such sources, law enforcement observed WARD enter, exit, park vehicles at, and spend significant time inside of the residence at 1135 Fairmont Street on a consistent basis throughout at least June and July 2019 during their surveillance of WARD. Based on that information, law enforcement officers deployed investigative techniques on WARD's residence, including mobile surveillance, electronic surveillance, and a pen register/trap and trace device.

7. During their investigation, law enforcement observed WARD participate in several suspected hand-to-hand narcotics transactions in parking lots in the Clearwater area. Law enforcement also conducted two controlled narcotic purchases with a CPD undercover officer (UC) and an unwitting participant, during which the UC purchased a controlled substance that subsequent lab testing confirmed to be fentanyl. Further, law enforcement conducted an attempted controlled purchase with a CPD UC, during which

3

transaction the UC observed WARD holding a substance that appeared consistent with the fentanyl purchased during the previous undercover deals.

8. On July 19, 2019, the Honorable Magistrate Judge Thomas G. Wilson authorized a search warrant for 1135 Fairmont Street, Clearwater, Florida, a residence under the control of WARD and Breone BOYD.

9. On July 24, 2019, DEA agents and Task Force officers, FDLE agents, and CPD detectives and officers executed the federal search warrant at 1135 Fairmont Street, Clearwater, Florida. WARD and Breone BOYD were inside the residence during the search warrant's execution. BOYD was in the master bedroom (subsequently identified to belong to WARD and BOYD); WARD was in the kitchen.[1]

10. During a search of the kitchen, law enforcement found small plastic baggies in a kitchen cabinet that contained an off-white powdery substance, which field-tested positive for fentanyl. Also in that cabinet, law enforcement found a baggie containing a white, rock-like substance, which field-tested positive for cocaine. Another baggie in that cabinet contained substances that field-tested positive for crack cocaine and fentanyl. The total estimated weight of the seized fentanyl is approximately 2.7 grams; the total estimated weight of the seized crack cocaine is approximately 16 grams.

---

[1] During the search warrant's execution, a smartphone belonging to WARD received a call; the caller visible on the screen was named, "Landlord." I therefore believe that WARD rents the property at 1135 Fairmont Street.

11. Also in that kitchen cabinet, law enforcement found a digital scale and baking soda. Based on my training and experience conducting narcotics investigations, I know that drug traffickers use baking soda to cook cocaine to turn it into crack cocaine. I also know that the various drug paraphernalia that agents found in the kitchen is indicative of packaging of narcotics for resale.

12. Below the kitchen cabinet and on a counter, law enforcement found a box of latex gloves, a box of surgical masks, over $500 in cash, and a small bowl. The bowl contained 9mm round, .380 caliber, and .40 caliber ammunition, which was in plain view in the bowl.

13. Agents identified a bedroom as belonging to WARD. That bedroom contained male clothing, male shoes, as well as a cellphone that WARD identified as belonging to him. WARD's bedroom was the same bedroom in which BOYD was sleeping when agents executed the search warrant. ✶

14. In the hallway closet across from WARD's bedroom, agents found two firearms inside a cereal box. The firearms included a loaded 9mm Smith & Wesson and a .380 caliber Bersa Thunder (unloaded). A records review showed that the Smith and Wesson firearm was stolen.

15. I have reviewed a computerized criminal history (NCIC) as well as judgment and convictions relating to WARD. These records show that WARD knew that he was a convicted felon, i.e., that he had previously been

5

convicted in any court of a crime punishable by imprisonment for a term exceeding one year, as he had the following conviction for which he served more than one year's imprisonment:

- Sale/Manufacture/Delivery of Cocaine, in the Sixth Judicial Circuit of Pinellas County, Florida, on or about August 21, 2012;

- Possession of Cocaine, in the Sixth Judicial Circuit of Pinellas County, Florida, on or about August 21, 2012;

16. I confirmed through consultation with an ATF Interstate Nexus Expert that all the firearms and ammunition that WARD possessed in his residence on or about July 24, 2019, were manufactured outside the State of Florida and, therefore, they had traveled in or affected interstate commerce prior to their recovery in the State of Florida.

17. I searched Florida Office of Executive Clemency's records, which show that WARD's right to possess firearms and/or ammunition has not been restored, and he has not received any pardons.

✱ Agents also located 2 other bedrooms in the residence. One room appeared to be a storage room that had water on the floor and no furniture. located on the opposite side of the residence from WARD's bedroom. The other room was next to WARD's bedroom, which was a child's bedroom. It contained child's clothing and furniture.

6

## CONCLUSION

18. I submit these facts as evidence that probable cause exists to believe that Joseph WARD has violated the laws of the United States, specifically, possessing firearms and ammunition affecting interstate and foreign commerce while a convicted felon under 18 U.S.C. § 922(g)(1).

_____
Ryan McMullen, Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me this **25** day of July, 2019

_____
HONORABLE CHRISTOPHER TUITE
United States Magistrate Judge

7